IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M<small>ERCK</small> & C<small>O</small>., I<small>NC</small>.,

        Plaintiff,

v.

X<small>AVIER</small> B<small>ECERRA</small>, U.S. Secretary of Health & Human Services, *et al.*

        Defendants.

Civil Action No. 1:23-1615 (CKK)

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

In support of its Motion for Summary Judgment, Plaintiff Merck & Co., Inc. (Merck) submits this statement of undisputed material facts. *See* L. Civ. R. 7(h)(1).

### Merck Products Subject to the Drug Price Negotiation Program

1. Merck developed and markets JANUVIA® (sitagliptin) (Januvia), a medication to treat type 2 diabetes. Decl. of Patrick T. Davish (Davish Decl.) ¶ 5.

2. Januvia was first approved by the U.S. Food and Drug Administration (FDA) on October 16, 2006. Davish Decl. ¶ 7.

3. Merck obtained multiple patents securing its intellectual property in Januvia, of which at least one patent remains operative. Davish Decl. ¶ 12.

4. Januvia will be selected for negotiation under the Drug Price Negotiation Program (the Program), established through the Inflation Reduction Act (IRA), in September 2023. Davish Decl. ¶ 13; Decl. of Jacob Roth (Roth Decl.) Exh. D, S. Dickson & I. Hernandez, *Drugs likely subject to Medicare Negotiation, 2026-2028*, 29 JMCP 229, 230–31 (Mar. 2023) (Dickson & Hernandez).

5. Merck developed and markets JANUMET® (sitagliptin and metformin HCL) (Janumet), another medication to treat type 2 diabetes. Davish Decl. ¶ 14.

6. Janumet was first approved by the FDA on March 30, 2007. Davish Decl. ¶ 16.

7. Merck obtained multiple patents securing its intellectual property in Janumet, of which at least one patent remains operative. Davish Decl. ¶ 20.

8. Merck developed and markets Janumet XR, an extended-release formulation of Janumet first approved by the FDA on February 2, 2012. Davish Decl. ¶¶ 21, 23.

9. Merck obtained multiple patents securing its intellectual property in Janumet XR, of which at least one patent remains operative. Davish Decl. ¶ 22.

10. Janumet and Janumet XR (treated as a single product under the IRA) will be selected for the Program's 2027 cycle. Davish Decl. ¶¶ 24–25; Dickson & Hernandez, *supra*, at 321.

11. Merck developed and markets KEYTRUDA® (pembrolizumab) (Keytruda), a cancer treatment for patients with unresectable or metastatic melanoma. Davish Decl. ¶¶ 26–27.

12. Keytruda was first approved by the FDA on September 4, 2014. Davish Decl. ¶ 27.

13. Merck obtained multiple patents covering Keytruda and related innovation, of which at least one patent remains operative. Davish Decl. ¶ 31.

14. Keytruda will be selected for the Program's 2028 cycle. Davish Decl. ¶¶ 24–25; Dickson & Hernandez, *supra*, at 321–32.

**Merck's Coerced Compliance with the Program**

15. Once each of the foregoing products is selected for the Program, Merck will "enter into" a "manufacturer agreement" with HHS, 42 U.S.C. § 1320f–2(a), pronouncing Merck's purported "agreement" to participate in "negotiations" that will conclude in a "maximum fair price" for that product. Davish Decl. ¶ 33.

16. Merck will "enter into" such an "agreement" only because, if it fails to do so, the IRA will impose a daily penalty that begins at 186% and reaches 1,900% of each drug's daily revenues from all sources. Davish Decl. ¶¶ 33, 37, 39.

17. For Januvia, that would amount to a penalty of tens of millions of dollars on the very first day of Merck's refusal to enter a "manufacturer agreement," soon escalating to hundreds of millions of dollars per day. Davish Decl. ¶ 37.

18. Merck's "ent[ry] into" any "manufacturer agreement" will be coerced by the threat of this penalty. Davish Decl. ¶¶ 33, 37, 39.

19. By the applicable deadlines, Merck will "agree to" the "maximum fair price[s]" embodied in HHS's final offers, 42 U.S.C. § 1320f–2(a)(1), only because of the threatened penalties if Merck fails to do so. Davish Decl. ¶¶ 41, 47–48.

20. Merck will provide "access to such price" to eligible individuals and entities participating in Medicare, 42 U.S.C. § 1320f–2(a)(1), only because the IRA threatens civil monetary penalties for failure to provide such "access," *id.* § 1320f–6(a) & (c). Davish Decl. ¶¶ 47–48.

21. The daily penalty described above, *supra* ¶ 16, is suspended only when a manufacturer terminates all of its Medicare manufacturer-discount agreements and Medicaid rebate agreements.  Davish Decl. ¶ 50.

22. Without those agreements, Merck cannot receive any payment for its products through Medicare Part B, Medicare Part D, or Medicaid.  Davish Decl. ¶ 50.

23. Together, these federal programs constitute nearly half of the prescription drug market in the United States.  Davish Decl. ¶ 50.

24. Exiting nearly half of the national prescription drug market would cost Merck billions of dollars in revenue and leave tens of millions of patients without access to their medications.  Davish Decl. ¶¶ 51, 57.

25. Merck's compliance with the Program is coerced by the consequences of terminating all Medicare and Medicaid participation.  Davish Decl. ¶¶ 50–51, 57.

**Merck's Compelled Expression under the Program**

26. Merck does not agree with (and does not wish to express) the message that drug selection under the Program initiates *bona fide* price negotiations.  Davish Decl. ¶¶ 36, 43.

27. Merck does not agree with (and does not wish to express) the message that Merck and the Government will reach, or have reached, a meeting of the minds following *bona fide* negotiations.  Davish Decl. ¶¶ 36, 43.

28. Merck does not agree with (and does not wish to express) the message that Merck's participation in the Program or its acceptance of the "maximum fair price" are voluntary.  Davish Decl. ¶¶ 37, 44; *see also supra*, ¶¶ 15–25.

29. Merck does not agree with (and does not wish to express) the message that the price HHS sets at the end of the Program's "negotiation" period represents the "maximum fair price" for any Merck product. Davish Decl. ¶¶ 38, 45.

30. The characterization of HHS's price as the only "fair" price contradicts Merck's strongly held views regarding drug pricing. Davish Decl. ¶¶ 38, 45.

31. Merck believes that its products must be priced to incentivize and support the expensive process of researching, developing, and securing FDA approval for new products. Davish Decl. ¶¶ 38, 45, 53–56.

32. Merck disagrees with (and does not wish to express) the message that, absent the Program, Merck would charge "unfair" prices. Davish Decl. ¶¶ 38, 45.

Dated: July 11, 2023

Respectfully submitted,

*/s/ Jacob ("Yaakov") M. Roth*
Yaakov M. Roth (D.C. Bar 995090)
Megan Lacy Owen (D.C. Bar 1007688)
Brinton Lucas (D.C. Bar 1015185)
John Henry Thompson (*admission pending*)
Louis J. Capozzi III (*admission pending*)
JONES DAY
51 Louisiana Avenue N.W.
Washington, DC 20012
(202) 879-3939

*Counsel for Plaintiff*
*Merck & Co., Inc.*