UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MERCK & CO., INC.,<br><br>              Plaintiff,<br><br>    v.<br><br>XAVIER BECERRA, U.S. Secretary of Health and Human Services, *et al.*,<br><br>              Defendants. | Civil Action No. 1:23-cv-01615-CKK |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h), Defendants Xavier Becerra, the U.S. Department of Health and Human Services (HHS), Chiquita Brooks-LaSure, and the Centers for Medicare & Medicaid Services (CMS), respectfully submit this combined response to Plaintiff Merck & Co., Inc.'s statement of undisputed material facts, ECF No. 23-2, and statement of undisputed material facts in support of Defendants' cross-motion for summary judgment.

**I.**     **Defendants' Response to Plaintiff's Statement of Undisputed Material Facts**

1.     Merck developed and markets JANUVIA® (sitagliptin) (Januvia), a medication to treat type 2 diabetes. Decl. of Patrick T. Davish (Davish Decl.) ¶ 5.

**Defendants' Response**: Defendants do not dispute that Merck & Co., Inc. developed and markets Januvia but aver that Merck & Co., Inc. does not currently hold the new drug application (NDA) for Januvia.

2.     Januvia was first approved by the U.S. Food and Drug Administration (FDA) on October 16, 2006. Davish Decl. ¶ 7.

1

**Defendants' Response**: Undisputed.

3. Merck obtained multiple patents securing its intellectual property in Januvia, of which at least one patent remains operative. Davish Decl. ¶ 12.

**Defendants' Response**: Undisputed.

4. Januvia will be selected for negotiation under the Drug Price Negotiation Program (the Program), established through the Inflation Reduction Act (IRA), in September 2023. Davish Decl. ¶ 13; Decl. of Jacob Roth (Roth Decl.) Exh. D, S. Dickson & I. Hernandez, *Drugs likely subject to Medicare Negotiation, 2026- 2028*, 29 JMCP 229, 230–31 (Mar. 2023) (Dickson & Hernandez).

**Defendants' Response**: Defendants do not dispute that Januvia was selected for negotiation under the IRA Medicare Drug Price Negotiation Program but aver that the selection announcement was made on August 29, 2023. HHS, *HHS Selects the First Drugs for Medicare Drug Price Negotiation* (Aug. 29, 2023), https://perma.cc/C689-57WY.

5. Merck developed and markets JANUMET® (sitagliptin and metformin HCL) (Janumet), another medication to treat type 2 diabetes. Davish Decl. ¶ 14.

**Defendants' Response**: Defendants do not dispute that Merck & Co., Inc. developed and markets Janumet but aver that Merck & Co., Inc. does not currently hold the NDA for Janumet.

6. Janumet was first approved by the FDA on March 30, 2007. Davish Decl. ¶ 16.

**Defendants' Response**: Undisputed.

7. Merck obtained multiple patents securing its intellectual property in Janumet, of which at least one patent remains operative. Davish Decl. ¶ 20.

**Defendants' Response**: Undisputed.

8.     Merck developed and markets Janumet XR, an extended-release formulation of Janumet first approved by the FDA on February 2, 2012. Davish Decl. ¶¶ 21, 23.

**Defendants' Response**: Defendants do not dispute that Merck & Co., Inc. developed and markets Janumet XR but aver that Merck & Co., Inc. does not currently hold the NDA for Janumet XR. Defendants do not dispute that the FDA first approved an extended-release formulation of Janumet on February 2, 2012.

9.     Merck obtained multiple patents securing its intellectual property in Janumet XR, of which at least one patent remains operative. Davish Decl. ¶ 22.

**Defendants' Response**: Undisputed.

10.    Janumet and Janumet XR (treated as a single product under the IRA) will be selected for the Program's 2027 cycle. Davish Decl. ¶¶ 24–25; Dickson & Hernandez, *supra*, at 321.

**Defendants' Response**: Defendants dispute Plaintiff's predictions about uncertain future events. CMS has neither promulgated program guidance applicable to, nor selected drugs for, initial price applicability year 2027 or future negotiation cycles. *See* 42 U.S.C. § 1320f(a), (b), (d).

11.    Merck developed and markets KEYTRUDA® (pembrolizumab) (Keytruda), a cancer treatment for patients with unresectable or metastatic melanoma. Davish Decl. ¶¶ 26–27.

**Defendants' Response**: Defendants do not dispute that Merck & Co., Inc. developed and markets Keytruda but aver that Merck & Co., Inc. does not currently hold the biologics license application (BLA) for Keytruda.

12.    Keytruda was first approved by the FDA on September 4, 2014. Davish Decl. ¶ 27.

**Defendants' Response**: Undisputed.

13. Merck obtained multiple patents covering Keytruda and related innovation, of which at least one patent remains operative. Davish Decl. ¶ 31.

**Defendants' Response**: Undisputed.

14. Keytruda will be selected for the Program's 2028 cycle. Davish Decl. ¶¶ 24–25; Dickson & Hernandez, *supra*, at 321–32.

**Defendants' Response**: Defendants dispute Plaintiff's predictions about uncertain future events. CMS has neither promulgated program guidance applicable to, nor selected drugs for, initial price applicability year 2028 or future negotiation cycles. *See* 42 U.S.C. § 1320f(a), (b), (d).

15. Once each of the foregoing products is selected for the Program, Merck will "enter into" a "manufacturer agreement" with HHS, 42 U.S.C. § 1320f–2(a), pronouncing Merck's purported "agreement" to participate in "negotiations" that will conclude in a "maximum fair price" for that product. Davish Decl. ¶ 33.

**Defendants' Response**: Defendants aver that CMS has asked Merck Sharp & Dohme (MSD), not Merck & Co., Inc., to participate in negotiations over Januvia for price applicability year 2026, because MSD currently holds the NDA for Januvia. *See* CMS, Medicare Drug Price Negotiation Program: Revised Guidance at 33-34, 131-32 (June 30, 2023), https://perma.cc/K6QB-C3MM ("Revised Guidance") (explaining that CMS will negotiate and enter agreements only with the "Primary Manufacturer" of a selected drug—that is, the entity that holds the NDA or BLA). Defendants also dispute that anything in the IRA requires any manufacturer to enter into an agreement, which is a legal question.

4

16. Merck will "enter into" such an "agreement" only because, if it fails to do so, the IRA will impose a daily penalty that begins at 186% and reaches 1,900% of each drug's daily revenues from all sources. Davish Decl. ¶¶ 33, 37, 39.

**Defendants' Response**: Defendants aver that CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia. *See* Revised Guidance at 33-34, 131-32. Defendants dispute that anything in the IRA requires any manufacturer to enter into an agreement, which is a legal question.

Defendants further dispute Plaintiff's characterization and construction of the tax provision, which is a legal question and is, in any event, contrary to the Treasury Department's construction of that provision. *See* IRS Notice No. 2023-52 ("IRS Notice") (Aug. 4, 2023), https://perma.cc/B9JZ-ZG7P.

17. For Januvia, that would amount to a penalty of tens of millions of dollars on the very first day of Merck's refusal to enter a "manufacturer agreement," soon escalating to hundreds of millions of dollars per day. Davish Decl. ¶ 37.

**Defendants' Response**: Defendants dispute Plaintiff's construction of the tax provision, which is a legal question and is, in any event, contrary to the Treasury Department's construction of that provision. *See* IRS Notice.

18. Merck's "ent[ry] into" any "manufacturer agreement" will be coerced by the threat of this penalty. Davish Decl. ¶¶ 33, 37, 39.

**Defendants' Response**: Defendants dispute that Merck & Co., Inc. will enter any agreement and aver that CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia. *See* Revised Guidance at 33-34, 131-32. Defendants also dispute that anything in the IRA requires or compels any manufacturer to enter into an agreement, which is a legal question.

19. By the applicable deadlines, Merck will "agree to" the "maximum fair price[s]" embodied in HHS's final offers, 42 U.S.C. § 1320f–2(a)(1), only because of the threatened penalties if Merck fails to do so. Davish Decl. ¶¶ 41, 47–48.

**Defendants' Response**: Defendants dispute that Merck & Co., Inc. will enter any agreement and aver that CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia. *See* Revised Guidance at 33-34, 131-32. Defendants also dispute that anything in the IRA requires any manufacturer to enter into an agreement, which is a legal question.

20. Merck will provide "access to such price" to eligible individuals and entities participating in Medicare, 42 U.S.C. § 1320f–2(a)(1), only because the IRA threatens civil monetary penalties for failure to provide such "access," *id.* § 1320f–6(a) & (c). Davish Decl. ¶¶ 47–48.

**Defendants' Response**: Defendants dispute that Merck & Co., Inc. will enter any agreement and aver that CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia. *See* Revised Guidance at 33-34, 131-32. Defendants dispute that anything in the IRA requires or compels any manufacturer to enter into an agreement or provide access to any prices to eligible individuals and entities, which is a legal question.

21. The daily penalty described above, *supra* ¶ 16, is suspended only when a manufacturer terminates all of its Medicare manufacturer-discount agreements and Medicaid rebate agreements. Davish Decl. ¶ 50.

**Defendants' Response**: Defendants dispute Plaintiff's characterization and construction of the tax provision, which is a legal question. *See* IRS Notice. Moreover, as a legal matter, a manufacturer of a selected drug will not be subject to the excise tax if it transfers its interest in the

selected drug to another entity, which can then make its own choices about negotiations. *See* Revised Guidance at 131-32.

22. Without those agreements, Merck cannot receive any payment for its products through Medicare Part B, Medicare Part D, or Medicaid. Davish Decl. ¶ 50.

**Defendants' Response**: Defendants do not dispute that, if Merck & Co., Inc. were to choose to withdraw from the Medicare and Medicaid programs, Merck & Co., Inc. would not receive payments through Medicare or Medicaid. *See* Revised Guidance at 33-34, 131-32. But Defendants aver that CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia, and Merck & Co., Inc. is therefore not faced with the potential choice of withdrawing from the Medicare and Medicaid programs. *See* Revised Guidance at 33-34, 131-32.

23. Together, these federal programs constitute nearly half of the prescription drug market in the United States. Davish Decl. ¶ 50.

**Defendants' Response**: Undisputed.

24. Exiting nearly half of the national prescription drug market would cost Merck billions of dollars in revenue and leave tens of millions of patients without access to their medications. Davish Decl. ¶¶ 51, 57.

**Defendants' Response**: Defendants do not dispute that if Merck & Co., Inc. were to choose to exit Medicare and Medicaid, it could lose revenue. Defendants aver that Merck & Co., Inc.'s exit from Medicaid and Medicaid would not necessarily lead to reduced access to specific medications for patients, depending on which entity holds the applicable NDA or BLA for the drugs in question. Defendants also aver that CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia, and Merck & Co., Inc. is therefore not faced with the

potential choice of withdrawing from the Medicare and Medicaid programs. *See* Revised Guidance at 33-34, 131-32.

25. Merck's compliance with the Program is coerced by the consequences of terminating all Medicare and Medicaid participation. Davish Decl. ¶¶ 50–51, 57.

**Defendants' Response**: Defendants dispute that Merck & Co., Inc. is being coerced and aver that CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia. *See* Revised Guidance at 33-34, 131-32. Further, Defendants dispute that anything in the IRA requires or coerces any manufacturer to enter into an agreement, which is a legal question.

26. Merck does not agree with (and does not wish to express) the message that drug selection under the Program initiates *bona fide* price negotiations. Davish Decl. ¶¶ 36, 43.

**Defendants' Response**: Defendants dispute that participating in the Negotiation Program forces any manufacturer to convey any message, which is a legal question. Further, the template agreement includes an explicit disclaimer, which makes clear that, by signing the agreement, a manufacturer is not endorsing the government's views. *See* Roth Decl., ECF No. 23-6, Ex. B at 4 (Template Agreement) (explaining that, by "signing this Agreement, the Manufacturer does not make any statement regarding or endorsement of CMS' views"); *see also id.* (explaining further than "[u]se of the term 'maximum fair price' and other statutory terms throughout this Agreement reflects the parties' intention that such terms be given the meaning specified in the statute and does not reflect any party's views regarding the colloquial meaning of those terms").

27. Merck does not agree with (and does not wish to express) the message that Merck and the Government will reach, or have reached, a meeting of the minds following *bona fide* negotiations. Davish Decl. ¶¶ 36, 43.

**Defendants' Response**:  Defendants dispute that participating in the Negotiation Program forces any manufacturer to convey any message, which is a legal question.  Further, the template agreement includes an explicit disclaimer, which makes clear that, by signing the agreement, a manufacturer is not endorsing the government's views.  *See* Template Agreement at 4.

28. Merck does not agree with (and does not wish to express) the message that Merck's participation in the Program or its acceptance of the "maximum fair price" are voluntary. Davish Decl. ¶¶ 37, 44; *see also supra*, ¶¶ 15–25.

**Defendants' Response**:  Defendants do not dispute that Merck may hold certain beliefs but dispute that participating in the Negotiation Program forces Merck to convey any message, which is a legal question.  Further, the template agreement includes an explicit disclaimer, which makes clear that, by signing the agreement, a manufacturer is not endorsing the government's message.  *See* Template Agreement 4.

29. Merck does not agree with (and does not wish to express) the message that the price HHS sets at the end of the Program's "negotiation" period represents the "maximum fair price" for any Merck product.  Davish Decl. ¶¶ 38, 45.

**Defendants' Response**:  Defendants dispute that participating in the Negotiation Program forces any manufacturer to convey any message, which is a legal question.  Further, the template agreement includes an explicit disclaimer, which makes clear that, by signing the agreement, a manufacturer is not endorsing the government's views.  *See* Template Agreement at 4.  Defendants also dispute that HHS "sets" a price for selected drugs and aver that the Negotiation Program instead involves a price negotiated between HHS and the manufacturer.

30. The characterization of HHS's price as the only "fair" price contradicts Merck's strongly held views regarding drug pricing.  Davish Decl. ¶¶ 38, 45.

9

**Defendants' Response**: Defendants dispute that the statutory language of the Negotiation Program forces any manufacturer to convey any message, which is a legal question.

31.     Merck believes that its products must be priced to incentivize and support the expensive process of researching, developing, and securing FDA approval for new products. Davish Decl. ¶¶ 38, 45, 53–56.

**Defendants' Response**: Defendants do not dispute that Merck & Co., Inc. may hold certain beliefs about how to price its products.

32.     Merck disagrees with (and does not wish to express) the message that, absent the Program, Merck would charge "unfair" prices. Davish Decl. ¶¶ 38, 45.

**Defendants' Response**: Defendants dispute that any aspect of the Negotiation Program forces any manufacturer to convey any message, which is a legal question. Further, the template agreement includes an explicit disclaimer, which makes clear that, by signing the agreement, a manufacturer is not endorsing the government's views. *See* Template Agreement at 4.

II.     **Statement of Undisputed Material Facts in Support of Defendants' Cross-Motion for Summary Judgement**

1.      On August 29, 2023, CMS published the list of drugs selected for negotiation for initial price applicability year 2026. *See* HHS, *HHS Selects the First Drugs for Medicare Drug Price Negotiation* (Aug. 29, 2023), https://perma.cc/C689-57WY.

2.      The drugs selected for price applicability year 2026 are Eliquis, Jardiance, Xarelto, Januvia, Farxiga, Entresto, Enbrel, Imbruvica, Stelara, and certain insulin products (comprising Fiasp, Fiasp FlexTouch, Fiasp PenFill, NovoLog, NovoLog FlexPen, and NovoLog PenFill). *See id*.

3.  MSD holds the new drug application (NDA) for Januvia. *See NDA 021995*, U.S. FDA: Drugs@FDA, https://perma.cc/HDS8-UNC6; *see also* Pl.'s Ex. D at 231, ECF No. 23-8 (listing "Merck Sharp & D[ohme]" as "[m]anufacturer" of Januvia).

4.  MSD is a separate corporate entity from Merck & Co., Inc. *See* FDA Supplemental Approval for NDA 021995, NDA 022044, NDA 202270 (June 21, 2022), https://perma.cc/HYW7-DYFR (addressed to "Merck Sharp & Dohme LLC., a subsidiary of Merck & Co., Inc."); Januvia Prescribing Information 26 (rev. June 2022), https://perma.cc/Y2FL-VKXK (stating on labeling that the drug is "[d]istributed by: Merck Sharp & Dohme Corp., a subsidiary of Merck & Co., Inc.").

5.  CMS has asked MSD, not Merck & Co., Inc., to participate in negotiations over Januvia. *See* Revised Guidance at 33-34, 131-32.

Dated:  September 11, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Alexander V. Sverdlov*
ALEXANDER V. SVERDLOV
CHRISTINE L. COOGLE
 Trial Attorneys
STEPHEN M. PEZZI
 Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8550
Email: alexander.v.sverdlov@usdoj.gov

*Counsel for Defendants*