# EXHIBIT A

(Slip Opinion)          OCTOBER TERM, 2023                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SHEETZ *v.* COUNTY OF EL DORADO, CALIFORNIA

CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA,
THIRD APPELLATE DISTRICT

No. 22–1074.   Argued January 9, 2024—Decided April 12, 2024

As a condition of receiving a residential building permit, petitioner
George Sheetz was required by the County of El Dorado to pay a
$23,420 traffic impact fee.  The fee was part of a "General Plan" en-
acted by the County's Board of Supervisors to address increasing de-
mand for public services spurred by new development.  The fee amount
was not based on the costs of traffic impacts specifically attributable
to Sheetz's particular project, but rather was assessed according to a
rate schedule that took into account the type of development and its
location within the County.  Sheetz paid the fee under protest and ob-
tained the permit.  He later sought relief in state court, claiming that
conditioning the building permit on the payment of a traffic impact fee
constituted an unlawful "exaction" of money in violation of the Takings
Clause.  In Sheetz's view, the Court's decisions in *Nollan* v. *California
Coastal Comm'n*, 483 U. S. 825, and *Dolan* v. *City of Tigard*, 512 U. S.
374, required the County to make an individualized determination
that the fee imposed on him was necessary to offset traffic congestion
attributable to his project.  The courts below ruled against Sheetz
based on their view that *Nollan* and *Dolan* apply only to permit condi-
tions imposed on an ad hoc basis by administrators, not to a fee like
this one imposed on a class of property owners by Board-enacted leg-
islation.  84 Cal. App. 5th 394, 402, 300 Cal. Rptr. 3d 308, 312.

*Held*: The Takings Clause does not distinguish between legislative and
administrative land-use permit conditions.  Pp. 4–11.

   (a) When the government wants to take private property for a pub-
lic purpose, the Fifth Amendment's Takings Clause requires the gov-
ernment to provide the owner "just compensation."  The Takings
Clause saves individual property owners from bearing "public burdens
which, in all fairness and justice, should be borne by the public as a

2                SHEETZ *v.* COUNTY OF EL DORADO

Syllabus

whole." *Armstrong* v. *United States*, 364 U. S. 40, 49.  Even so, the
States have substantial authority to regulate land use, see *Village of
Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, and a State law that merely
restricts land use in a way "reasonably necessary to the effectuation of
a substantial government purpose" is not a taking unless it saps too
much of the property's value or frustrates the owner's investment-
backed expectations.  *Penn Central Transp. Co.* v. *New York City*, 438
U. S. 104, 123, 127.  Similarly, when the government can deny a build-
ing permit to further a "legitimate police-power purpose," it can also
place conditions on the permit that serve the same end.  *Nollan*, 483
U. S., at 836.  For example, if a proposed development will "substan-
tially increase traffic congestion," the government may condition the
building permit on the owner's willingness "to deed over the land
needed to widen a public road."  *Koontz* v. *St. Johns River Water Man-
agement Dist.*, 570 U. S. 595, 605.  But when the government with-
holds or conditions a building permit for reasons unrelated to its legit-
imate land-use interests, those actions amount to extortion.  See
*Nollan*, 483 U. S., at 837.

    The Court's decisions in *Nollan* and *Dolan* address the potential
abuse of the permitting process by setting out a two-part test modeled
on the unconstitutional conditions doctrine.  See *Perry* v. *Sindermann*,
408 U. S. 593, 597.  First, permit conditions must have an "essential
nexus" to the government's land-use interest, ensuring that the gov-
ernment is acting to further its stated purpose, not leveraging its per-
mitting monopoly to exact private property without paying for it.  See
*Nollan*, 483 U. S., at 837, 841.  Second, permit conditions must have
"rough proportionality" to the development's impact on the land-use
interest and may not require a landowner to give up (or pay) more than
is necessary to mitigate harms resulting from new development.  See
*Dolan*, 512 U. S., at 391, 393; *Koontz*, 570 U. S., at 612–615.  Pp. 4–6.

    (b) The County's traffic impact fee was upheld below based on the
view that the *Nollan/Dolan* test does not apply to monetary fees im-
posed by a legislature, but nothing in constitutional text, history, or
precedent supports exempting legislatures from ordinary takings
rules.  The Constitution provides "no textual justification for saying
that the existence or the scope of a State's power to expropriate private
property without just compensation varies according to the branch of
government effecting the expropriation."  *Stop the Beach Renourish-
ment, Inc.* v. *Florida Dept. of Environmental Protection*, 560 U. S. 702,
714 (plurality opinion).  Historical practice similarly shows that legis-
lation was the conventional way that governments at the state and
national levels exercised their eminent domain power to obtain land
for various governmental purposes, and to provide compensation to
dispossessed landowners.  The Fifth Amendment enshrined this long

Syllabus

standing practice. Precedent points the same way as text and history. A legislative exception to the *Nollan*/*Dolan* test "conflicts with the rest of [the Court's] takings jurisprudence," which does not otherwise distinguish between legislation and other official acts. *Knick* v. *Township of Scott*, 588 U. S. 180, 185. That is true of precedents involving physical takings, regulatory takings, and the unconstitutional conditions doctrine which underlies the *Nollan*/*Dolan* test. Pp. 7–10.

(c) As the parties now agree, conditions on building permits are not exempt from scrutiny under *Nollan* and *Dolan* just because a legislative body imposed them. Whether a permit condition imposed on a class of properties must be tailored with the same degree of specificity as a permit condition that targets a particular development is an issue for the state courts to consider in the first instance, as are issues concerning whether the parties' other arguments are preserved and how those arguments bear on Sheetz's legal challenge. Pp. 10–11.

84 Cal. App. 5th 394, 300 Cal. Rptr. 3d 308, vacated and remanded.

BARRETT, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion, in which JACKSON, J., joined. GORSUCH, J., filed a concurring opinion. KAVANAUGH, J., filed a concurring opinion, in which KAGAN and JACKSON, JJ., joined.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

————

No. 22–1074

————

## GEORGE SHEETZ, PETITIONER *v.* COUNTY OF EL DORADO, CALIFORNIA

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, THIRD APPELLATE DISTRICT

[April 12, 2024]

JUSTICE BARRETT delivered the opinion of the Court.

George Sheetz wanted to build a small, prefabricated home on his residential parcel of land.  To obtain a permit, though, he had to pay a substantial fee to mitigate local traffic congestion.  Relying on this Court's decisions in *Nollan* v. *California Coastal Comm'n*, 483 U. S. 825 (1987), and *Dolan* v. *City of Tigard*, 512 U. S. 374 (1994), Sheetz challenged the fee as an unlawful "exaction" of money under the Takings Clause.  The California Court of Appeal rejected that argument because the traffic impact fee was imposed by legislation, and, according to the court, *Nollan* and *Dolan* apply only to permit conditions imposed on an ad hoc basis by administrators.  That is incorrect. The Takings Clause does not distinguish between legislative and administrative permit conditions.

## I

### A

El Dorado County, California is a rural jurisdiction that lies east of Sacramento and extends to the Nevada border. Much of the County's 1,700 square miles is backcountry.  It

Opinion of the Court

is home to the Sierra Nevada mountain range and the Eldorado National Forest.  Those areas, composed mainly of public lands, are sparsely populated.  Visitors from around the world use the natural areas for fishing, backpacking, and other recreational activities.

Most of the County's residents are concentrated in the west and east regions.  In the west, the towns of El Dorado Hills, Cameron Park, and Shingle Springs form the outer reaches of Sacramento's suburbs.  Placerville, the county seat, lies just beyond them.  In the east, residents live along the south shores of Lake Tahoe.  Highway 50 connects these population centers and divides the County into north and south portions.

In recent decades, the County has experienced significant population growth, and with it an increase in new development.  To account for the new demand on public services, the County's Board of Supervisors adopted a planning document, which it calls the General Plan, to address issues ranging from wastewater collection to land-use restrictions.[1]  The Board of Supervisors is a legislative body under state law, and the adoption of its General Plan is a legislative act.  See Cal. Govt. Code Ann. §65300 *et seq.* (West 2024).

To address traffic congestion, the General Plan requires developers to pay a traffic impact fee as a condition of receiving a building permit.  The County uses proceeds from these fees to fund improvements to its road system.  The fee amount is determined by a rate schedule, which takes into account the type of development (commercial, residential, and so on) and its location within the County.  The amount is not based on "the cost specifically attributable to the particular project on which the fee is imposed."  84 Cal. App. 5th 394, 402, 300 Cal. Rptr. 3d 308, 312 (2022).

---

[1] See County of El Dorado Adopted General Plan, https://edcgov.us/ Government/planning/Pages/adopted_general_plan.aspx.

Opinion of the Court

### B

George Sheetz owns property in the center of the County near Highway 50, which the General Plan classifies as "Low Density Residential."[2]  Sheetz and his wife applied for a permit to build a modest prefabricated house on the parcel, with plans to raise their grandson there.  As a condition of receiving the permit, the County required Sheetz to pay a traffic impact fee of $23,420, as dictated by the General Plan's rate schedule.  Sheetz paid the fee under protest and obtained the permit.  The County did not respond to his request for a refund.

Sheetz sought relief in state court.  He claimed, among other things, that conditioning the building permit on the payment of a traffic impact fee constituted an unlawful "exaction" of money in violation of the Takings Clause.  In Sheetz's view, our decisions in *Nollan* v. *California Coastal Comm'n*, 483 U. S. 825, and *Dolan* v. *City of Tigard*, 512 U. S. 374, required the County to make an individualized determination that the fee amount was necessary to offset traffic congestion attributable to his specific development.  The County's predetermined fee schedule, Sheetz argued, failed to meet that requirement.

The trial court rejected Sheetz's claim and the California Court of Appeal affirmed.  Relying on precedent from the California Supreme Court, the Court of Appeal asserted that the *Nollan/Dolan* test applies only to permit conditions imposed "'on an individual and discretionary basis.'"  84 Cal. App. 5th, at 406, 300 Cal. Rptr. 3d, at 316 (quoting *San Remo Hotel L. P.* v. *City and Cty. of San Francisco*, 27 Cal. 4th 643, 666–670, 41 P. 3d 87, 102–105 (2002)).  Fees imposed on "a broad class of property owners through legislative action," it said, need not satisfy that test.  84 Cal. App.

─────────

[2] See Figure LU–1: Land Use Diagram, https://edcgov.us/government/planning/adoptedgeneralplan/figures/documents/LU-1.pdf.

5th, at 407, 300 Cal. Rptr. 3d, at 316.  The California Supreme Court denied review.

State courts have reached different conclusions on the question whether the Takings Clause recognizes a distinction between legislative and administrative conditions on land-use permits.[3]  We granted certiorari to resolve the split.  600 U. S. ___ (2023).

## II
### A

When the government wants to take private property to build roads, courthouses, or other public projects, it must compensate the owner at fair market value.  The just compensation requirement comes from the Fifth Amendment's Takings Clause, which provides: "nor shall private property be taken for public use, without just compensation."  By requiring the government to pay for what it takes, the Takings Clause saves individual property owners from bearing "public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Armstrong* v. *United States*, 364 U. S. 40, 49 (1960).

The Takings Clause's right to just compensation coexists with the States' police power to engage in land-use planning.  (Though at times the two seem more like in-laws than soulmates.)  While States have substantial authority to regulate land use, see *Village of Euclid* v. *Amber Realty Co.*, 272 U. S. 365 (1926), the right to compensation is triggered if they "physically appropriat[e]" property or otherwise in-

_____

[3] Compare, *e.g.*, *Home Builders Assn. of Dayton and Miami Valley* v. *Beavercreek*, 89 Ohio St. 3d 121, 128, 729 N. E. 2d 349, 356 (2000); *Northern Ill. Home Builders Assn.* v. *County of Du Page*, 165 Ill. 2d 25, 32–33, 649 N. E. 2d 384, 389 (1995) (applying the *Nollan/Dolan* test to legislative permit conditions), with, *e.g.*, *St. Clair Cty. Home Builders Assn.* v. *Pell City*, 61 So. 3d 992, 1007 (Ala. 2010); *Home Builders Assn. of Central Ariz.* v. *Scottsdale*, 187 Ariz. 479, 486, 930 P. 2d 993, 1000 (1997) (following California's approach).

terfere with the owner's right to exclude others from it, *Cedar Point Nursery* v. *Hassid*, 594 U. S. 139, 149–152 (2021). That sort of intrusion on property rights is a *per se* taking. *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U. S. 419, 426 (1982). Different rules apply to State laws that merely restrict how land is used. A use restriction that is "reasonably necessary to the effectuation of a substantial government purpose" is not a taking unless it saps too much of the property's value or frustrates the owner's investment-backed expectations. *Penn Central Transp. Co.* v. *New York City*, 438 U. S. 104, 123, 127 (1978); see also *Lucas* v. *South Carolina Coastal Council*, 505 U. S. 1003, 1016 (1992) ("[T]he Fifth Amendment is violated when land-use regulation does not substantially advance legitimate state interests *or denies an owner economically viable use of his land*" (internal quotation marks omitted)).

Permit conditions are more complicated. If the government can deny a building permit to further a "legitimate police-power purpose," then it can also place conditions on the permit that serve the same end. *Nollan*, 483 U. S., at 836. Such conditions do not entitle the landowner to compensation even if they require her to convey a portion of her property to the government. *Ibid.* Thus, if a proposed development will "substantially increase traffic congestion," the government may condition the building permit on the owner's willingness "to deed over the land needed to widen a public road." *Koontz* v. *St. Johns River Water Management Dist.*, 570 U. S. 595, 605 (2013). We have described permit conditions of this nature as "a hallmark of responsible land-use policy." *Ibid.* The government is entitled to put the landowner to the choice of accepting the bargain or abandoning the proposed development. See R. Epstein, Bargaining With the State 188 (1993).

The bargain takes on a different character when the government withholds or conditions a building permit for rea-

Opinion of the Court

sons unrelated to its land-use interests. Imagine that a local planning commission denies the owner of a vacant lot a building permit unless she allows the commission to host its annual holiday party in her backyard (in propertyspeak, granting it a limited-access easement). The landowner is "likely to accede to the government's demand, no matter how unreasonable," so long as she values the building permit more. *Koontz*, 570 U. S., at 605. So too if the commission gives the landowner the option of bankrolling the party at a local pub instead of hosting it on her land. See *id.*, at 612–615. Because such conditions lack a sufficient connection to a legitimate land-use interest, they amount to "an out-and-out plan of extortion." *Nollan*, 483 U. S., at 837 (internal quotation marks omitted).

Our decisions in *Nollan* and *Dolan* address this potential abuse of the permitting process. There, we set out a two-part test modeled on the unconstitutional conditions doctrine. See *Perry* v. *Sindermann*, 408 U. S. 593, 597 (1972) (government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests"). First, permit conditions must have an "essential nexus" to the government's land-use interest. *Nollan*, 483 U. S., at 837. The nexus requirement ensures that the government is acting to further its stated purpose, not leveraging its permitting monopoly to exact private property without paying for it. See *id.*, at 841. Second, permit conditions must have "'rough proportionality'" to the development's impact on the land-use interest. *Dolan*, 512 U. S., at 391. A permit condition that requires a landowner to give up more than is necessary to mitigate harms resulting from new development has the same potential for abuse as a condition that is unrelated to that purpose. See *id.*, at 393. This test applies regardless of whether the condition requires the landowner to relinquish property or requires her to pay a "monetary exactio[n]" instead of relinquishing the property. *Koontz,* 570 U. S., at 612–615.

Opinion of the Court

## B

The California Court of Appeal declined to assess the County's traffic impact fee for an essential nexus and rough proportionality based on its view that the *Nollan*/*Dolan* test does not apply to "legislatively prescribed monetary fees." 84 Cal. App. 5th, at 407, 300 Cal. Rptr. 3d, at 316 (internal quotation marks omitted).  That was error.  Nothing in constitutional text, history, or precedent supports exempting legislatures from ordinary takings rules.

The Constitution's text does not limit the Takings Clause to a particular branch of government.  The Clause itself, which speaks in the passive voice, "focuses on (and prohibits) a certain 'act': the taking of private property without just compensation."  *Knight* v. *Metropolitan Govt. of Nashville & Davidson Cty.*, 67 F. 4th 816, 829 (CA6 2023).  It does not single out legislative acts for special treatment. Nor does the Fourteenth Amendment, which incorporates the Takings Clause against the States.  On the contrary, the Amendment constrains the power of each "State" as an undivided whole. §1.  Thus, there is "no textual justification for saying that the existence or the scope of a State's power to expropriate private property without just compensation varies according to the branch of government effecting the expropriation."  *Stop the Beach Renourishment, Inc.* v. *Florida Dept. of Environmental Protection*, 560 U. S. 702, 714 (2010) (plurality opinion).  Just as the Takings Clause "protects 'private property' without any distinction between different types," *Horne* v. *Department of Agriculture*, 576 U. S. 351, 358 (2015), it constrains the government without any distinction between legislation and other official acts.  So far as the Constitution's text is concerned, permit conditions imposed by the legislature and other branches stand on equal footing.

The same goes for history.  In fact, special deference for legislative takings would have made little sense historically, because legislation was the conventional way that

governments exercised their eminent domain power. Before the founding, colonial governments passed statutes to secure land for courthouses, prisons, and other public buildings. See, *e.g.*, 4 Statutes at Large of South Carolina 319 (T. Cooper ed. 1838) (Act of 1770) (Cooper); 6 Statutes at Large, Laws of Virginia 283 (W. Hening ed. 1819) (Act of 1752) (Hening). These statutes "invariably required the award of compensation to the owners when land was taken." J. Ely, "That Due Satisfaction May Be Made:" the Fifth Amendment and the Origins of the Compensation Principle, 36 Am. J. Legal Hist. 1, 5 (1992). Colonial practice thus echoed English law, which vested Parliament alone with the eminent domain power and required that property owners receive "full indemnification . . . for a reasonable price." 1 W. Blackstone, Commentaries on the Laws of England 139 (1768).

During and after the Revolution, governments continued to exercise their eminent domain power through legislation. States passed statutes to obtain private land for their new capitals and provided compensation to the landowners. See, *e.g.*, 4 Cooper 751–752 (Act of 1786); 10 Hening 85–87 (1822 ed.) (Act of 1779). At the national level, Congress passed legislation to settle the Northwest Territory, which likewise required the payment of compensation to dispossessed property owners. Northwest Ordinance of 1789, 1 Stat. 52. Two years later, the Fifth Amendment enshrined this longstanding practice. Against this background, it is little surprise that early constitutional theorists understood the Takings Clause to bind the legislature specifically. See, *e.g.*, 3 J. Story, Commentaries on the Constitution of the United States §1784, p. 661 (1833); 2 J. Kent, Commentaries on American Law 275–276 (1827). Far from supporting a deferential view, history shows that legislation was a prime target for scrutiny under the Takings Clause.

Precedent points the same way as text and history. A

Opinion of the Court

legislative exception to the *Nollan*/*Dolan* test "conflicts with the rest of our takings jurisprudence," which does not otherwise distinguish between legislation and other official acts. *Knick* v. *Township of Scott,* 588 U. S. 180, 185 (2019). That is true of physical takings, regulatory takings, and the unconstitutional conditions doctrine in which the *Nollan*/*Dolan* test is rooted.

Start with our physical takings cases. We have applied the *per se* rule requiring just compensation to both legislation and administrative action. In *Loretto*, we held that a state statute effected a taking because it authorized cable companies to install equipment on private property without the owner's consent. 458 U. S., at 438. In *Horne*, we held that an administrative order effected a taking because it required farmers to give the Federal Government a portion of their crop to stabilize market prices. 576 U. S., at 361. The branch of government that authorized the appropriation did not matter to the analysis in either case. Nor should it have. As we have explained: "The essential question is not . . . whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree). It is whether the government has physically taken property for itself or someone else." *Cedar Point*, 594 U. S., at 149.

This principle is evident in our regulatory takings cases too. We have examined land-use restrictions imposed by both legislatures and administrative agencies to determine whether the restriction amounted to a taking. In *Pennsylvania Coal Co.* v. *Mahon*, we held a state statute effected a taking because it prohibited the owner of mineral rights from mining coal beneath the surface estate, thus depriving the mineral rights of practically all economic value. 260 U. S. 393, 414 (1922). And in *Palazzolo* v. *Rhode Island*, we remanded for the lower courts to determine whether an agency decision effected a taking when it denied the owner permission to build a beach club on the wetland portion of

Opinion of the Court

his property but allowed him to build a home on the upland portion. 533 U. S. 606, 631 (2001). Here again, our decisions did not suggest that the outcome turned on which branch of government imposed the restrictions.

Excusing legislation from the *Nollan/Dolan* test would also conflict with precedent applying the unconstitutional conditions doctrine in other contexts. We have applied that doctrine to scrutinize legislation that placed conditions on the right to free speech, *Agency for Int'l Development* v. *Alliance for Open Society Int'l, Inc.*, 570 U. S. 205 (2013), free exercise of religion, *Sherbert* v. *Verner*, 374 U. S. 398 (1963), and access to federal courts, *Terral* v. *Burke Constr. Co.*, 257 U. S. 529 (1922), among others, *e.g.*, *Memorial Hospital* v. *Maricopa County*, 415 U. S. 250 (1974) (right to travel). Failing to give like treatment to legislative conditions on building permits would thus "relegat[e the just compensation requirement] to the status of a poor relation" to other constitutional rights. *Dolan*, 512 U. S., at 392.

In sum, there is no basis for affording property rights less protection in the hands of legislators than administrators. The Takings Clause applies equally to both—which means that it prohibits legislatures and agencies alike from imposing unconstitutional conditions on land-use permits.

### III

The County no longer contends otherwise. In fact, at oral argument, the parties expressed "radical agreement" that conditions on building permits are not exempt from scrutiny under *Nollan* and *Dolan* just because a legislature imposed them. Tr. of Oral Arg. 4, 73–74. The County was wise to distance itself from the rule applied by the California Court of Appeal, because, as we have explained, a legislative exception to the ordinary takings rules finds no support in constitutional text, history, or precedent.

We do not address the parties' other disputes over the validity of the traffic impact fee, including whether a permit

Opinion of the Court

condition imposed on a class of properties must be tailored with the same degree of specificity as a permit condition that targets a particular development.  The California Court of Appeal did not consider this point—or any of the parties' other nuanced arguments—because it proceeded from the erroneous premise that legislative permit conditions are categorically exempt from the requirements of *Nollan* and *Dolan*.  Whether the parties' other arguments are preserved and how they bear on Sheetz's legal challenge are for the state courts to consider in the first instance.

\*    \*    \*

The judgment of the California Court of Appeal is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 22–1074

_____

## GEORGE SHEETZ, PETITIONER *v.* COUNTY OF EL DORADO, CALIFORNIA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, THIRD APPELLATE DISTRICT

[April 12, 2024]

JUSTICE SOTOMAYOR, with whom JUSTICE JACKSON joins, concurring.

I join the Court's resolution of the limited question presented in this case, that conditions on building permits are "not exempt from scrutiny under *Nollan* and *Dolan* just because a legislature imposed them." *Ante*, at 10; see *Nollan* v. *California Coastal Comm'n*, 483 U. S. 825 (1987); *Dolan* v. *City of Tigard*, 512 U. S. 374 (1994). There is, however, an important threshold question to any application of *Nollan*/*Dolan* scrutiny: whether the permit condition would be a compensable taking if imposed outside the permitting context.

"A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz* v. *St. Johns River Water Management Dist.*, 570 U. S. 595, 612 (2013). In the takings context, *Nollan*/*Dolan* scrutiny therefore applies only when the condition at issue would have been a compensable taking if imposed outside the permitting process. See *Koontz*, 570 U. S., at 612 ("[W]e began our analysis in both *Nollan* and *Dolan* by observing that if the government had directly seized the easements it sought to obtain through the permitting process, it would have committed a *per se* taking").

2                    SHEETZ *v.* EL DORADO COUNTY

SOTOMAYOR, J., concurring

   The question presented in this case did not include that antecedent question: whether the traffic impact fee would be a compensable taking if imposed outside the permitting context and therefore could trigger *Nollan*/*Dolan* scrutiny. The California Court of Appeal did not consider that question and the Court does not resolve it.  See *ante,* at 10–11. With this understanding, I join the Court's opinion.

Cite as: 601 U. S. ____ (2024)          1

GORSUCH, J., concurring

# SUPREME COURT OF THE UNITED STATES

_____

No. 22–1074

_____

## GEORGE SHEETZ, PETITIONER *v.* COUNTY OF EL DORADO, CALIFORNIA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, THIRD APPELLATE DISTRICT

[April 12, 2024]

JUSTICE GORSUCH, concurring.

George Sheetz sued El Dorado County, alleging that the county's actions violated the Takings Clause under the test this Court set forth in *Nollan* v. *California Coastal Comm'n*, 483 U. S. 825 (1987), and *Dolan* v. *City of Tigard*, 512 U. S. 374 (1994). State courts dismissed Mr. Sheetz's suit, holding that the *Nollan/Dolan* test applies only in challenges to administrative, not legislative, actions. Today, the county essentially confesses error, and the Court corrects the state courts' mistake. It does so because our Constitution deals in substance, not form. However the government chooses to act, whether by way of regulation "'or statute, or ordinance, or miscellaneous decree,'" it must follow the same constitutional rules. *Ante,* at 9 (quoting *Cedar Point Nursery* v. *Hassid*, 594 U. S. 139, 149 (2021)).

The Court notes but does not address a separate question: whether the *Nollan/Dolan* test operates differently when an alleged taking affects a "class of properties" rather than "a particular development." *Ante,* at 11. But how could it? To assess whether a government has engaged in a taking by imposing a condition on the development of land, the *Nollan/Dolan* test asks whether the condition in question bears an "'essential nexus'" to the government's land-use interest and has "'rough proportionality'" to a property's impact on that interest. *Ante,* at 6. Nothing about that test

depends on whether the government imposes the challenged condition on a large class of properties or a single tract or something in between. Once more, how the government acts may vary but the Constitution's standard for assessing those actions does not.

Our precedents confirm as much. In *Nollan*, the California Coastal Commission told the plaintiffs that they could build a home on their land only if they accepted an easement allowing public access across their property along the beach. The plaintiffs argued that the commission's demand amounted to a taking without just compensation, and the Court agreed. In doing so, the Court acknowledged that the commission hadn't singled out the plaintiffs' particular property for special treatment but "had similarly conditioned" dozens of other building projects. 483 U. S., at 829. It acknowledged, too, that the commission's demand of the plaintiffs came about only because of a "'comprehensive program'" demanding similar public access easements up and down the California coast. *Id.,* at 841. But none of that made any difference in the Court's analysis, the test it applied, or the conclusion it reached. All that mattered was whether the government's action amounted to an uncompensated taking of the property of the plaintiffs whose case was actually before the Court. *Id.,* at 838.

In *Dolan*, the Court faced a similar situation and reached a similar conclusion. There, an Oregon municipality conditioned a building permit on the plaintiff's agreement to dedicate part of her land to "flood control and traffic improvements." 512 U. S., at 377. No one suggested that the city had targeted the plaintiff's development for special treatment; everyone agreed that the city's challenged action was the result of a "comprehensive land use pla[n]," one developed to meet "statewide planning goals." *Ibid.* Even so, the Court held an "individualized determination" necessary to determine whether an unconstitutional taking had occurred under the same test the Court applied in *Nollan*.

GORSUCH, J., concurring

512 U. S., at 393.

The logic of today's decision is entirely consistent with these conclusions. The Takings Clause, the Court stresses, is no "'poor relation' to other constitutional rights." *Ante,* at 10 (quoting *Dolan*, 512 U. S., at 392). And the government rarely mitigates a constitutional problem by multiplying it. A governmentally imposed condition on the freedom of speech, the right to assemble, or the right to confront one's accuser, for example, is no more permissible when enforced against a large "class" of persons than it is when enforced against a "particular" group. If takings claims must receive "like treatment," *ante,* at 10, whether the government owes just compensation for taking your property cannot depend on whether it has taken your neighbors' property too.

In short, nothing in *Nollan*, *Dolan*, or today's decision supports distinguishing between government actions against the many and the few any more than it supports distinguishing between legislative and administrative actions. In all these settings, the same constitutional rules apply. With that understanding, I am pleased to join the Court's opinion.

Cite as:  601 U. S. ____ (2024)          1

KAVANAUGH, J., concurring

# SUPREME COURT OF THE UNITED STATES

_____

No. 22–1074

_____

## GEORGE SHEETZ, PETITIONER *v.* COUNTY OF EL DORADO, CALIFORNIA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, THIRD APPELLATE DISTRICT

[April 12, 2024]

JUSTICE KAVANAUGH, with whom JUSTICE KAGAN and JUSTICE JACKSON join, concurring.

I join the Court's opinion.  I write separately to underscore that the Court has not previously decided—and today explicitly declines to decide—whether "a permit condition imposed on a class of properties must be tailored with the same degree of specificity as a permit condition that targets a particular development." *Ante*, at 10–11. Importantly, therefore, today's decision does not address or prohibit the common government practice of imposing permit conditions, such as impact fees, on new developments through reasonable formulas or schedules that assess the impact of classes of development rather than the impact of specific parcels of property.  Moreover, as is apparent from the fact that today's decision expressly leaves the question open, no prior decision of this Court has addressed or prohibited that longstanding government practice.  Both *Nollan* and *Dolan* considered permit conditions tailored to specific parcels of property.  See *Dolan* v. *City of Tigard*, 512 U. S. 374, 379–381, 393 (1994); *Nollan* v. *California Coastal Comm'n*, 483 U. S. 825, 828–829 (1987).  Those decisions had no occasion to address permit conditions, such as impact fees, that are imposed on permit applicants based on reasonable formulas or schedules that assess the impact of classes of development.